Eastern District of Kentucky
F I L E D

DEC 2 0 2019

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| JOHN DOE, | ) | Case No: 5:19-CV-497 - KKC |
| | ) | JURY TRIAL DEMANDED |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE: |
| | ) | |
| KENTUCKY COMMUNITY & | ) | |
| TECHNICAL COLLEGE SYSTEM, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BIG SANDY COMMUNITY & | ) | |
| TECHNICAL COLLEGE, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DR. SHERRY ZYLKA, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN ROES 1-5, | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

NOW COMES Plaintiff, John Doe[1], by and through undersigned counsel, Eric F. Long, of

Friedman & Nemecek, L.L.C., and for his cause of action against the Defendants, Kentucky

---

[1] Plaintiff is contemporaneously filing a Motion for Permission to Proceed under Pseudonym. Plaintiff is entitled to proceed anonymously because of the highly sensitive nature of the disciplinary proceedings against him that form the basis of this Complaint, and the fact that the Defendants are fully aware of his identity and will not be prejudiced in any way.

Community & Technical College System, Big Sandy Community & Technical College, Dr. Sherry Zylka, and John Roes 1 through 5 (collectively "Roes"):

## NATURE OF THE ACTION

1.  This is an action for declaratory and injunctive relief and for damages arising out of a decision made by Dr. Sherry Zylka ("Zylka") and/or John Roes to terminate the employment of Plaintiff from his position as a faculty member at Big Sandy Community & Technical College ("Big Sandy"), a public community college operated under the umbrella of the Kentucky Community & Technical College System ("KCTCS") in violation of state and federal law as set forth herein.

2.  In addition to the discriminatory and unlawful decision to terminate Plaintiff's employment, the Defendants' actions resulted in a "taking" of Plaintiff's right to continued employment at KCTCS and permanently damaged his good name and reputation.  These property and/or liberty interests have been and will continue to be taken from Plaintiff without notice, a fair hearing, including the opportunity to refute specific allegations and the right to cross-examine adverse witnesses.  The hearing process is devoid of basic fairness and is afoul of Constitutionally protected Due Process rights and the Defendants' own policies and Plaintiff's contractual rights.

## JURISDICTION

3.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. §1343, 28 U.S.C. § 1367(a), 42 U.S.C. §1983 and §1988, 20 U.S.C. § 1681, *et seq.*, and the Fourteenth Amendment to the Constitution of the United States of America.

4.  Furthermore, this Court has jurisdiction pursuant to 42 U.S.C. §2000e, *et seq.* commonly known as, Title VII of the Civil Rights Act of 1964.  On October 10, 2019, Plaintiff filed his complaint with the United States Equal Employment Opportunity Commission ("the "EEOC"),

alleging that he was discriminated against on the basis of his gender.  On or about December 10, 2019, Plaintiff received a notice of right to sue from the EEOC.  *See Exhibit A*.

## VENUE

5.  Venue is appropriate under 28 U.S.C. §1391(b).

## PARTIES

6.  Plaintiff, John Doe, is a natural person who resides in Floyd County, Kentucky, which is located within the Southern Division of the Eastern District.  At all relevant times, John was employed as a full-time faculty member at Big Sandy.

7.  Defendants, Big Sandy and KCTCS are public community colleges located in Floyd County, Kentucky, which is located in the Southern Division of the Eastern District.

8.  Defendants, Zylka and Roes are employees and/or agents of Big Sandy and/or KCTCS and at all relevant times were employed and acting in the course of their employment within Floyd County, Kentucky.

## FACTUAL ALLEGATIONS

9.  On or about June 16, 2018, Plaintiff entered into a contract renewal ("the Contract") with KCTCS as a faculty member at Big Sandy to teach in the psychology department during the 2018-2019 academic year.  *See* the Contract executed by Plaintiff [2] attached hereto as *Exhibit B*.

10. On or about September 21, 2019, Plaintiff received a letter, on behalf of Zylka, advising that Plaintiff may have violated KCTCS's Harassment Free Workplace and Sexual Misconduct Policies.  The letter further advised Plaintiff that he would be placed on paid administrative leave, however the letter provides no notice whatsoever as to the factual basis of the purported violations, including the identity of his accuser(s) or when the alleged misconduct occurred.  The

---

[2] Plaintiff is not in possession of a fully executed contract.  Upon information and belief, KCTCS is in possession of the fully executed contract.

3

correspondence further threatened placement on unpaid leave if he failed to remain available during the process.

11. Thereafter, Plaintiff received a phone call requiring him to submit to an interview. Plaintiff requested additional information regarding the specific allegations at issue, however he was told that such information would not be given over the phone and "you'll see from the questions we ask."

12. Upon information and belief, on October 4, 2018, Plaintiff met with investigators Jimmy Wright, Krystal Tackett and Valerie Parks and was subjected to an interview that lasted nearly one hour. During this meeting, Plaintiff was not advised of the nature of the allegations prior to answering questions.

13. On or about November 8, 2018, an investigative report was completed and submitted to Zylka and others at KCTCS.

14. On or about November 28, 2018, Plaintiff received a "Pre-Termination Notice/Pre-Termination Hearing Invitation" letter advising him that KCTCS intended to terminate his employment due to violations of the policies referenced in the September 21, 2018 letter and for the first time, a violation of the Student Harassment or Discrimination Grievance Procedures. Similarly, for the first time, Plaintiff was advised that the College had received a report on September 17, 2018 that Plaintiff had "made students uncomfortable when, on multiple occasions, [Plaintiff] touched them in an unwanted manner and commented on their appearance." The matter was set for a "pre-termination hearing" on December 4, 2018 and Plaintiff was given until November 30, 2018 to confirm his participation in the "hearing."

4

15. On or about December 5, 2018, Plaintiff attended the "pre-termination hearing" with counsel serving as his "advisor" pursuant to the College's Sexual Misconduct Policy and participating by telephone.

16. Due primarily to his concerns about lack of due process, following the "pre-termination hearing" Plaintiff requested time to provide additional evidence to Dr. Zylka in advance of her final determination relative to whether Plaintiff had violated the policies.

17. On or about December 10, 2018, Plaintiff received a copy of the investigation report completed on or about November 8, 2018. Despite providing some additional information relative to Plaintiff's alleged misconduct, the names of Plaintiff's accusers were redacted forcing him to speculate as to their identity. For the first time, Plaintiff learned of the specific nature of the allegations made against him, which included allegations made by two unknown students, who reported that Plaintiff had made inappropriate comments and had touched their hands, arms, or legs in a manner that made them uncomfortable. Unlike many Title IX complaints, there were no allegations that Plaintiff sexually assaulted complainants, or any other individual.

18. On or about December 17, 2018, Plaintiff did provide additional information and evidence to Zylka.

19. On December 20, 2018, Plaintiff received a "Termination Notice" letter that officially terminated his employment with KCTCS.

**I. KCTCS' Policies Applied to Big Sandy**

**A. The College's Anti-Harassment/Discrimination Procedure**

20. At the time of the complaint(s) made against Plaintiff, the College had in effect, an Anti-Harassment/Discrimination Procedure, which was codified within the College as Procedure No. 3.3.1, which stated in relevant part:

Individuals including students, employees, volunteers, customers, and visitors shall not be forced to tolerate a hostile work environment or be subject to illegal offense(s) against a person or property motivated in whole or in part by an offender's bias against sex, race, religion, disability, ethnic origin, sexual orientation, or any other characteristic protected by local, state, or federal employment discrimination law.

College Procedure 3.3.1-P [3] provides for the steps to be taken during an investigation of a violation of the above policy. Specifically, the College is to investigate claims that fall under the Sexual Misconduct Policy in accordance with that policy. Investigations not conducted pursuant to the Sexual Misconduct Policy are to be investigated and managed jointly by the college Human Resources Department and Office of General Counsel. *See Exhibit C.*

21. The Sexual Misconduct Procedure, codified by the College as Procedure No. 3.3.1A-P sets forth the Assessment and Investigation Process in Appendix A. *See Exhibit D*. The Sexual Misconduct Procedure requires the College to conduct a "Title IX Assessment" to determine whether an investigation is required. *Id.* If an investigation is required, "the investigation must be a fair and reliable fact-gathering process" that is conducted thoroughly, impartially, and fairly." *Id.* The process further provides that both the "Complainant and Respondent will be given the opportunity to present witnesses or other evidence." *Id.*

22. If the "Initial Assessment" contains sufficient information to suggest a violation of the Sexual Misconduct Policy" KCTCS will "send a written Notification Letter to both the Complainant and Respondent" *Id.* The "Notification Letter provides each party with a brief summary of the conduct at issue, the specific provision of the policy violations that are alleged to have taken place, and details about the process moving forward." *Id.* The "Notification Letter

---

[3] Plaintiff does not have a copy of Procedure 3.3.1-P in effect in 2018, but instead relies on the revised version created on March 12, 2019. *See Exhibit C.* Upon information and belief, there are no significant substantive changes.

will also disclose the right of both the Complainant and Respondent to have advisors or support persons throughout the investigatory and disciplinary process." *Id.*

## II.     The Contract between KCTCS and John Doe

23. Plaintiff renewed his employment on or about June 13, 2018 by signing an Employment Contract for the assignment period between August 1, 2018 and May 31, 2018. *See Exhibit B*.

24. The Contract expressly provides that Plaintiff and KCTCS agree to be bound by "KCTCS policies and procedures." *Id.* KCTCS policies and procedures referenced in the Contract include the policies and procedures referenced herein.

25. Plaintiff accepted the Contract and in exchange for his employment, provided valuable consideration in the form of the execution of his duties as a faculty member.

26. Plaintiff fulfilled his obligations under the Contract.

## COUNT I

### Violation of the Due Process Clause of the 14th Amendment to the United States Constitution, Pursuant to 42 U.S.C. §§ 1983, 1985 and 1988

27. Plaintiff repeats, re-alleges and incorporates by reference, the allegations contained in all preceding paragraphs as if set forth fully herein.

28. The Fourteen Amendment to the United States Constitution proves that no state shall "deprive any person of life, liberty, or property, without due process of law."

29. A person has a protected property and liberty interest in his employment, future employment opportunities and occupational liberty, of which he cannot be deprived without due process.

30. Plaintiff's constitutionally protected property and liberty interest in his employment are to be free from arbitrary dismissal arise from the policies, courses of conduct, practices and procedures set forth by KCTCS as well as Plaintiff's Constitutional and contractual rights.

31. It is well established that Fourteenth Amendment due process protections are required in employment decisions made in higher education disciplinary proceedings such as KCTCS.

32. As a result, Plaintiff, who was subjected to disciplinary action is entitled to the due process protections of the Fourteenth Amendment to the United States Constitution.

33. Defendants, as a public college and individuals acting on behalf of KCTCS, have an absolute duty to provide its employees equal protection and due process of law by and through any and all policies and procedures set forth by the Defendant.

34. Under both federal and state law, Plaintiff had a constitutionally protected property and liberty interest in his employment with KCTCS.

35. Plaintiff was entitled to process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he was facing.  The allegations in this matter, resulted in a sanction that will have lifelong ramifications for Plaintiff, including loss of his employment and the resulting inability to find similar work.

36. Plaintiff was entitled to fundamentally fair procedures to determine whether he was responsible for the alleged violations of KCTCS' policies.

37. In the course of its investigation and hearing process, Defendants knowingly, flagrantly and maliciously violated Plaintiff's clearly established rights under the Due Process Clause of the Fourteenth Amendment through the Defendants' repeated acts of deprivation of the minimal requirements of procedural fairness.

38. Defendants maintained their unlawful process to terminate, despite their actual knowledge that their conduct was unlawful.

39. Upon information and belief, Defendants were pressured by the Department of Education into complying with the Title IX investigative and adjudicatory process mandated by the 2011

8

Dear Colleague Letter.[4]   Upon information and belief, the University did nothing to change its policies following the issuance of the 2017 Dear Colleague Letter[5], which called into question, including the lack of cross-examination, seen in the educational disciplinary process mandated by the 2011 version.

40. Defendants deprived Plaintiff of his liberty and property interests without affording him basic due process, including but not limited to, notice of the allegation, the identity of his accusers and adverse witnesses, his right to a fair adjudication, to a meaningful opportunity to be heard by those making the decision on credibility and ultimately responsibility, to question his accuser, to challenge the credibility of other adverse witnesses, and to present evidence and witnesses in support of his defense.   Rather than permit Plaintiff to a fair and impartial process, Defendants conducted a superficial and secretive hearing while having full control of what is presented to the Panel for adjudication of the charges.

41. In attempting to demonstrate Defendants' compliance with the 2011 Dear Colleague Letter, and based on the gender bias expressed, upon information and belief, in its own training materials and implicit in its policies and procedures, the Defendants subjected Plaintiff to an insufficient process when they failed to provide Plaintiff with a fair and reasonable opportunity to defend himself and arrived at a predetermined, arbitrary and unwarranted decision.

42. As a result, Defendants failed to provide Plaintiff with the basic due process protections that Defendants is required to provide employees accused of sexual misconduct.

43. Defendants were acting under the color of law when they showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

44. Defendants agreed to, approved, and ratified this unconstitutional conduct.

---

[4] https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html
[5] https://www.cmu.edu/title-ix/colleague-title-ix-201709.pdf

45. As a result of these due process violations, Plaintiff continued to suffer ongoing harm, including damages to his reputation, loss of his employment and the inability to get a similar position as a psychology professor and other non-economic and economic damages.  Furthermore,

46.   As a direct and proximate cause of Defendants' conduct, Plaintiff sustained tremendous damages to his person and reputation, including without limitation, emotional distress, loss of his loss of employment and comparable future employment obligations, economic damages and other direct and consequential damages.

## COUNT II

### Deliberate Indifference to Violations of Plaintiff's Constitutional Rights

47. Plaintiff repeats, re-alleges and incorporates by reference, the allegations contained in all preceding paragraphs as if set forth fully herein.

48. On more than one occasion, including by letters sent to KCTCS's general counsel and Zylka on December 5th and 14th, 2018, Plaintiff and/or counsel notified Defendants that the disciplinary process violated well established law regarding the minimal due process requirements in Title IX proceedings.

49. Defendants knew that the process utilized to investigate and terminate Plaintiff's employment violated his constitutional rights.

50. Defendants had a realistic opportunity to act in a way to prevent Plaintiff's constitutional rights from being violated and to prevent harm from occurring to Plaintiff.

51. Defendant failed to take reasonable steps to prevent harm from occurring.

52. As a direct and proximate cause of Defendants' conduct, Plaintiff sustained tremendous damages to his person and reputation, including without limitation, emotional distress, loss of his

loss of employment and comparable future employment obligations, economic damages and other direct and consequential damages.

## COUNT III

### Discrimination in Violation of Title IX of the Educational Amendments Act of 1972

53. Plaintiff repeats, re-alleges and incorporates by reference, the allegations contained in all preceding paragraphs as if set forth fully herein.

54. Title IX of the Educational Amendments of 1972 ("Title IX"), codified at 20 U.S.C. §1681, *et seq.*, provides, in relevant part, "No person in the United States shall, on the basis of sex, be excluded from participation or activity receiving Federal financial assistance."

55. Title IX applies to all public and private educational programs and institutions that receive any federal financial assistance.

56. KCTCS is a public educational institution that receives federal funding and/or assistance and is therefore subject to Title IX.

57. The Defendants' imposition of discipline where gender is a motivating factor in the investigation and/or decision to discipline relating to allegations of sexual misconduct is enforceable through a private cause of action.

58. Defendants had an obligation under Title IX to ensure that adequate training is provided to investigate and determine what constitutes a violation and appropriate discipline was provided by Defendants.

59. Defendants are required to provide basic due process rights to all parties involved in a sexual misconduct investigation and/or hearing.

60. Pursuant to Title IX, Plaintiff has a right to pursue his employment in an educational setting free from discrimination by Defendant on the basis of sex.

11

61. In violation of Title IX, Plaintiff was wrongfully subjected to a KCTCS' disciplinary process marred by procedural flaws and sexual bias against males.

62. Upon information and belief, in virtually all cases involving a Title IX complaint at KCTCS, the accused is a male and the accusing students are female. KCTCS has created an environment in which it is impossible for a male accused of sexual misconduct to receive the due process guaranteed by Title IX.

63. Plaintiff was subjected to an erroneous outcome by Defendants with respect to the investigation and discipline issued against him in this matter, in violation of Title IX.

64. There are at least four causes for this discriminatory environment at KCTCS. First, a finding of "not responsible" carries the threat that the Department of Education's Office for Civil Rights could institute an investigation that would result in the loss of federal funding. There could also be civil actions filed against the KCTCS that would garner publicity and impact applications and admissions to KCTCS.

65. Moreover, the individual defendants and other employees/agents of KCTCS involved in the disciplinary process are not thinking about justice, individual rights, or their obligation to provide a fair and impartial process. Instead, they are thinking about what would be most efficient and expedient for them in their professional roles and for the public brand and attractiveness to potential students and donors.

66. Finally, KCTCS is susceptible to internal and external pressures including efforts by those who wish to change the so called "campus rape culture" at the expense of the individual rights of the accused male. KCTCS has embraced this view, which results in bias in the administration of the disciplinary process and destroys the presumption of guilt that Plaintiff and similarly situated males are entitled to.

12

67. There were significant evidentiary weaknesses underlying Defendants' decision.

68. Upon information and belief, Defendant's training materials provided to investigators, instilled a bias against male students accused of violating its policies.

69. The training materials, combined with the pressure to eradicate gender-based violence on campus, create a bias against males in collegiate environments facing charges relating to sexual misconduct, including against Plaintiff by Defendants.

70. The denial of due process and gender bias that existed throughout the investigation and enforcement of the discipline against Plaintiff resulted in an erroneous outcome that was based on flawed facts, logic and credibility determinations by Defendants.

71. Upon information and belief, male students in sexual misconduct cases at KCTCS are discriminated against on the basis of their sex. Males are presumed guilty, forced to meet a burden of proof that is inconsistent with the College polices, and credibility determinations are made against males.

72. As a direct and proximate cause of Defendants' conduct, Plaintiff sustained tremendous damages to his person and reputation, including without limitation, emotional distress, loss of his employment and comparable future employment, and economic damages and other direct and consequential damages.

## COUNT IV

### Breach of Contract

73. Plaintiff repeats, re-alleges and incorporates by reference, the allegations contained in all preceding paragraphs as if set forth fully herein.

13

74. Based on the foregoing, KCTCS entered into a lawful and enforceable employment contract with Plaintiff. Plaintiff fully completed his contractual obligations in a satisfactory manner. In exchange for Plaintiff's performance of his contractual obligation, Defendants agreed to provide employment benefits and to be bound by the terms of its policies and procedures.

75. Defendant breached the Contract by terminating Plaintiff's employment and failing to be bound by the policies and procedures expressly set forth in the Contract.

76. Defendants breached the contract by failing to abide by the terms set forth in Procedures 3.3.1-P and 3.3.1A-P, including but not limited to in the following ways:

    a.  Not investigating the complaints under the Sexual Misconduct Procedure set forth in 3.3.1A-P;

    b.  Not conducting a thorough, impartial, fair, or reliable fact-gathering process or investigation;

    c.  Not providing equal opportunity to Complainants and Respondent to present witnesses or other evidence;

    d.  Not providing equal opportunity to Complainants and Respondent to be heard;

    e.  Not conducting an Initial Assessment; and

    f.  Not providing a Notification Letter in accordance with the Policy;

    g.  Making a decision to terminate Plaintiff prior to the completion of the disciplinary process; and

    h.  Hiring Plaintiff's replacement prior to the completion of the disciplinary process.

77. As a direct and proximate cause of Defendants' conduct, Plaintiff sustained tremendous damages to his person and reputation, including without limitation, emotional distress, loss of his employment and comparable future employment, and economic damages and other direct and consequential damages.

14

## COUNT V

### Employment Discrimination in violation of Title VII of the Civil Rights ACT of 1964 and the Kentucky Human Rights Act

78. Plaintiff repeats, re-alleges and incorporates by reference, the allegations contained in all preceding paragraphs as if set forth fully herein.

79. Plaintiff is a member of a protected class of persons, based on his gender.

80. Plaintiff was qualified to maintain his employment position as a faculty member at Big Sandy.

81. Defendant's discriminated against Plaintiff due to his gender, in deciding to terminate Plaintiff's employment.

82. Plaintiff was replaced by a female faculty member, who, upon information and belief, was offered the job prior after the allegations made against Plaintiff, but prior to his termination.

83. Plaintiff filed a complaint with the EEOC on October 10, 2019 alleging gender discrimination and received his right to sue letter on December 10, 2019.

84. Plaintiff has exhausted all of his administrative remedies prior to filing this lawsuit.

## COUNT VI

### Breach of Common Law Duty of Fundamental Fairness

85. Plaintiff repeats, re-alleges and incorporates by reference, the allegations contained in all preceding paragraphs as if set forth fully herein.

86. Defendants have a common law duty to ensure that its disciplinary process, as it related to Plaintiff was conducted with basic and fundamental fairness.

87. Defendants breached their duty of basic and fundamental fairness by conducting a disciplinary process with insufficient due process.

15

88. As a direct and proximate cause of Defendants' conduct, Plaintiff sustained tremendous damages to his person and reputation, including without limitation, emotional distress, loss of his employment and comparable future employment, and economic damages and other direct and consequential damages.

## COUNT VII

### Negligence

89. Plaintiff repeats, re-alleges and incorporates by reference, the allegations contained in all preceding paragraphs as if set forth fully herein.

90. Defendants owed Plaintiff a duty of care to conduct its disciplinary process in accordance with the policies and procedures set forth by KCTCS.

91. Defendants breached their duty of care to Plaintiff by failing to abide by its written policies and procedures and by depriving Plaintiff of his constitutional right to due process.

92. As a direct and proximate cause of Defendants' breaches, Plaintiff sustained tremendous damages to his person and reputation, including without limitation, emotional distress, loss of his employment and comparable future employment, and economic damages and other direct and consequential damages.

## COUNT VIII

### Intentional Infliction of Emotional Distress

93. Plaintiff repeats, re-alleges and incorporates by reference, the allegations contained in all preceding paragraphs as if set forth fully herein.

94. The conduct of the defendants, as described herein was continued in an effort to achieve or confirm a predetermined result in Plaintiff's disciplinary proceeding to justify the termination of Plaintiff's employment.  Defendants purposefully and intentionally utilized an alternative

disciplinary process to strip Plaintiff of the rights and accommodations afforded to him under the KCTCS policies and procedures.  Defendants' conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized society.

95. Defendants either intended to inflict emotional distress on Plaintiff or knew or should have known that emotional distress was the likely result from such conduct.

96. Defendants' conduct, whether intentional or reckless, did proximately cause Plaintiff to suffer severe emotional distress as well as other substantial injury, damage and loss.

## COUNT IX

### Declaratory Judgment

97. Plaintiff repeats, re-alleges and incorporates by reference, the allegations contained in all preceding paragraphs as if set forth fully herein.

98. Defendants have committed numerous violations of Plaintiff's rights as set forth herein.

99. Plaintiff's future employment opportunities have been severely damaged.  Without appropriate redress, the unfair outcome will continue to cause irreversible and irreparable damages to Plaintiff.

100.  As a result of the foregoing, there exists a justiciable controversy between the Plaintiff and Defendant with respect to the outcome, permanency, and future handling of Plaintiff's formal employment record at KCTCS.

101.   Therefore, Plaintiff respectfully requests that this Honorable Court, pursuant to 28 U.S.C. §2201, declare that: (i) the outcome and findings made by Defendants relating to the allegations set forth by his be his accuser(s) be reversed; (ii) Plaintiff's reputation be restored; (iii) Plaintiff's disciplinary record be expunged and sealed; (iv) any record of Plaintiff's termination from Big Sandy and/or KCTCS be removed from his personnel file; (v) any record of his

accuser(s)' complaint against Plaintiff be permanently destroyed; (vi) Plaintiff be reinstated to the position as a faculty member at Big Sandy; (vii) KCTCS's rules, regulations and guidelines relating to the adjudication of allegations of sexual misconduct are unconstitutional as applied.

## COUNT X

### Declaratory Judgment

102.    Plaintiff repeats, re-alleges and incorporates by reference, the allegations contained in all preceding paragraphs as if set forth fully herein.

103.    Based on the foregoing, Defendants had a valid and enforceable employment contract. In exchange for Plaintiff's performance of his contractual obligation, Defendants agreed to provide compensation and a faculty position at Big Sandy and to be bound by and conduct themselves in accordance with its written policies and procedures.

a.   Defendant breached its express and/or implied contract with Plaintiff by terminating Plaintiff's employment and by failing to abide by its written policies and procedures.

104.    Defendants violated Plaintiff's fundamental right to liberty in his good name, reputation and employment without a fair and just hearing process and in violation of his Due Process rights.

105.    Defendants violated Plaintiff's fundamental property right to his employment without a fair and just hearing process and in violation of his Due Process rights.

106.    Therefore, Defendant violated the contract with Plaintiff when it failed to afford him a proper hearing on the charges before him and failing provide employment consistent with the Contract.

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter an order for judgement in favor of Plaintiff and against Defendants as follows:

18

(i) A preliminary and subsequent permanent injunction fully reinstating Plaintiff to his position at Big Sandy;

(ii) Expunge and/or seal any reference to the alleged misconduct, the charges, the investigation and/or the adjudication of the charges from Plaintiff's disciplinary and personnel file;

(iii)The record of Plaintiff's dismissal be removed from his personnel file;

(iv)KCTCS's rules, regulations and guidelines relating to the adjudication of allegations of sexual misconduct are unconstitutional as applied;

(v) An award of Plaintiff's attorney's fees and costs; and

(vi)Awarding Plaintiff such other and further relief that this Court deems just, equitable and proper.

Respectfully submitted,

/s/ Eric F. Long

Eric F. Long
Friedman & Nemececk, L.L.C.
1360 E. 9th Street, Suite 650
Cleveland, Ohio 44114
T: (216) 928-7700
F: (216) 820-4659
E: efl@fanlegal.com

Attorney for Plaintiff (appearing pursuant to a pending *Pro Hac Vice* Motion)