**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT PIKEVILLE**

**CIVIL ACTION NO. 20-6-DLB**

**JOHN CECIL**                                                                                  **PLAINTIFF**

**v.**                        **MEMORANDUM OPINION & ORDER**

**KENTUCKY COMMUNITY &**
**TECHNICAL COLLEGE SYSTEM, et al.**                              **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendants Kentucky Community & Technical College System, Sherry Zylka, and John Roes 1 through 5's Motion to Dismiss for Failure to State a Claim.  (Doc. # 25).  The Motion has been fully briefed, (Docs. # 30 and 31), and is now ripe for the Court's review.  For the reasons set forth herein, the Motion is **granted**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff John Cecil[1] requests declaratory and injunctive relief against Defendants Kentucky Community & Technical College System ("KCTCS"), Big Sandy Community & Technical College ("BSCTS"), Dr. Sherry Zylka and John Roes 1 through 5,[2] for damages arising out of the termination of his employment at the Big Sandy Campus of KCTCS due

---

[1]      Plaintiff originally filed his Complaint under the pseudonym John Doe, (Doc. # 1), along with a Motion for Permission to Proceed under Pseudonym, (Doc. # 3), which was denied by this Court on January 30, 2020, (Doc. # 8).  As a result, the action is now styled with Plaintiff's full name.

[2]      As mentioned above, *supra* n.1, John Cecil originally proceeded as John Doe, and therefore named the unknown Defendants John Roe 1 through 5.  (*See* Doc. # 1).  For purposes of clarity, the Court will continue to refer to these Defendants as John Roes 1 through 5 although they are renamed John Does 1 through 5 in Cecil's First Amended Complaint.  (*See* Doc. # 11).

to allegations of sexual harassment.[3]  (Doc. # 11 ¶ 1).  Plaintiff asserts a number of claims against Defendants: (I) violation of the Due Process Clause of the 14th Amendment, (II) deliberate indifference, (III) discrimination in violation of Title IX of the Civil Rights Act, (IV) breach of contract, (V) employment discrimination in violation of Title VII of the Civil Rights Act and the Kentucky Civil Rights Act, (VI) breach of common law duty of fundamental fairness, (VII) negligence, (VIII) intentional infliction of emotional distress, and (IX and X) two counts seeking declaratory judgment for his reinstatement, expungement of his employee record, and for amendment of KCTCS policies on allegations of sexual misconduct.  (*Id.* at ¶¶ 28-105).  Defendants move to dismiss each of these claims.  (Doc. # 25).

On or about June 16, 2018, Plaintiff Cecil entered into a contract ("the contract") renewing his position as a faculty member in the psychology department at BSCTS for the 2018-2019 academic year.  (*Id.* ¶ 9).  On or about September 21, 2018, he received a letter from Dr. Sherry Zylka that he "may have violated KCTCS's Harassment Free Workplace and Sexual Misconduct Policies."  (*Id.* ¶ 10).  The letter informed Cecil that he would be placed on paid administrative leave, and further indicated that he would be placed on unpaid leave if he did not make himself available during the investigation process.  (*Id.*).  After receiving the letter, Cecil was informed by phone that he was required to submit to an interview.  (*Id.* ¶ 11).  During the phone conversation, Cecil

---

[3]       Plaintiff's Complaint lists all of the above-mentioned Defendants.  (Doc. # 9 at 1). However, Plaintiff only issued summons to KCTCS, BSCTS, and Zylka. (Doc. # 24). Plaintiff, although ordered to Show Cause, (Doc. # 32), failed to illustrate why Defendants John Roes 1 through 5 should not be dismissed for failure to prosecute under Federal Rule of Civil Procedure 4(m).  Further, as pointed out by Defendants, because BSCTS has no independent legal existence outside of KCTCS, BSCTS is not a proper party to this action, and is dismissed.  *See* Ky. Rev. Stat. §§ 164.580, 164.591 (KRS § 164.580 establishes KCTCS, and KRS § 164.591 indicates where the *locations* of KCTCS will be established) (emphasis added); (Doc. # 25).

requested what specific allegations were being made against him, but was told this information would not be provided over the phone and "you'll see from the questions we ask." (*Id.*). The interview subsequently occurred on October 4, 2018, and Cecil was not advised of the nature of the allegations prior to answering questions from the interviewers. (*Id.* ¶ 12). Following the interview, on or about November 8, 2018, the investigative report was completed, and on November 28, 2018, Cecil received a "Pre-Termination Notice/Pre-Termination Hearing Invitation" advising him that KCTCS intended to terminate his employment due to his violation of KCTCS polies. (*Id.* ¶¶ 14-15). Namely, the document stated that Cecil had "made students uncomfortable when, on multiple occasions, [Plaintiff] touched them in an unwanted manner and commented on their appearance." (*Id.*). A pre-termination hearing was set for December 4, 2021, in which Cecil participated by telephone with legal counsel present. (*Id.* ¶ 15-16). Cecil requested time to provide additional evidence to Dr. Zylka prior to a final determination and was able to provide such information to Zylka. (*Id.* ¶¶ 17, 19). On or about December 10, 2018, Cecil received a copy of the investigative report which was supplemented with additional specific information about his misconduct, including that he had made inappropriate comments and touched two students in ways that made them uncomfortable. (*Id.* ¶ 18). Cecil's employment was terminated by KCTCS on December 20, 2018. (*Id.* ¶ 20).

## II.  ANALYSIS

### A.  Standard of Review

Granting a motion to dismiss is appropriate if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Further, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In order to have "facial plausibility," the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  (*Id.*) (quoting *Twombly*, 550 U.S. at 556).  In evaluating a motion to dismiss, a court should "construe the complaint in the light most favorable to the plaintiff" and "accept all well-pleaded factual allegations as true."  *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570).  However, "mere conclusory statements, do not suffice" and legal conclusions "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 678-79.

### B.    Applicability of the Eleventh Amendment

The Eleventh Amendment to the United States Constitution provides that:

> The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  Although suits against a state by one of its own citizens are not directly addressed by the amendment, "unassailable case law has interpreted the amendment in such a way to close that gap."  *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002).  Because of this interpretation, states are generally "immune from private suit in both federal and state courts."  *Id.*

This immunity extends to arms of the state.  *In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 782 (6th Cir. 2017).  Both federal courts within the Sixth Circuit and Kentucky state courts have held that KCTCS is an agency of the Kentucky state government.  *See McCollum v. Owensboro Cmty. & Tech. Coll.*, No. 4:09-CV-121, 2010

4

WL 1742379, at *2 (W.D. Ky. April 29, 2010); *Benton v. Ky. Cmty. & Tech. Coll.*, No. 5:14-CV-42, 2014 WL 4388255, at *2 (E.D. Ky. Sept. 4, 2014); *Robinson v. Ky. Cmty. & Tech. Coll.*, No. 2014-CA-659, 2015 WL 5656312, at *1 (Ky. Ct. App. Sept. 25, 2015).  Thus, all of Plaintiff's claims against KCTCS are barred.

Similarly, Cecil's claims against Dr. Zylka and John Roes 1 through 5 ("the individual Defendants"), in their official capacities, are barred, excluding those that seek prospective injunctive relief.  The Eleventh Amendment bars suits against state officers in their official capacities, but as Plaintiff points out, does not prevent "a federal court from issuing an injunction ordering *prospective* relief against a state official in order to prevent future constitutional violations."  *Barton*, 293 F.3d at 948 (emphasis added); (Doc. # 30 at 8).

The exception for prospective injunctive relief originated in *Ex parte Young*, 209 U..S. 123, 155-56, where the Supreme Court determined that officers of the state "who threaten and are about to commence proceedings . . . to enforce against parties affected an unconstitutional act" may be enjoined from doing so by a federal court.  The Sixth Circuit has interpreted this doctrine to mean that "the claim must seek prospective relief to end a *continuing* violation of federal law."  *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (emphasis added).  Therefore, if there is no ongoing violation of federal law, the *Ex parte Young* exception does not apply.  However, the exception "does not allow an award for monetary relief that is the practical equivalent of money damages, even if this relief is characterized as equitable."  *MacDonald v. Village of Northport, Mich.*, 164 F.3d 964, 971 (6th Cir. 1999).

5

As explained in *Barton*, even if *Ex parte Young*'s requirements are met by "naming officials (rather than the state) as defendants, and seeking injunctive relief, relief should not be granted if 'the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else.'" 293 F.3d at 949 (quoting *Papasan*, 478 U.S. at 278). In *Barton*, the Sixth Circuit determined that even though the plaintiffs framed their suit as one for prospective injunctive relief, it was a disguised attempt to recover money damages from states, and was thus barred by the Eleventh Amendment. *Id.* at 949-51. While the court specifically discussed retroactive monetary relief, it also stated that "the Supreme Court and [the Sixth Circuit] does not bar only retroactive monetary relief, but rather *all* retroactive relief." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008) (emphasis in original).

Here, Defendants similarly argue that Cecil is attempting to disguise his request for retrospective injunction relief as one for prospective injunctive relief. (Doc. # 31 at 2). A cursory look at Cecil's amended Complaint confirms that his suit is largely one for retrospective relief. Each of the counts asserted in Cecil's amended Complaint discuss past actions taken by KCTCS, Dr. Zylka, and John Roes 1 through 5, which allegedly violated Plaintiff's rights. *See, e.g.*, (Doc. # 11 ¶ 43) ("Defendants failed to provide Plaintiff with the basic due process protections that Defendants [are] required to provide employees accused of sexual misconduct"); (*Id.* ¶ 64) ("Plaintiff was subjected to an erroneous outcome by Defendants with respect to the investigation and discipline issued against him in this matter, in violation of Title IX"); (*Id.* ¶ 76) ("Defendants breached the Contract by terminating Plaintiff's employment and failing to be bound by the policies and

procedures expressly set forth in the Contract").  Further, most of the relief requested is not prospective in nature.  For example, Plaintiff requests that the court

> [D]eclare that: (i) the outcome and findings made by Defendants relating to allegations set forth by his accuser(s) be reversed; (ii) Plaintiff's reputation be restored; (iii) Plaintiff's disciplinary record be expunged or sealed; (iv) any record of Plaintiff's termination from Big Sandy and/or KCTCS be removed from his personnel file; (v) any record of his accuser(s)' complaint against Plaintiff be permanently destroyed; (vi) Plaintiff by reinstated to the position as a faculty member at Big Sandy; (vii) KCTCS's rules, regulations, and guidelines relating to the adjudication of allegations of sexual misconduct are unconstitutional as applied.

(*Id.* ¶ 100).  Many of these requests ask the Court to redress actions that have already occurred.  Any attempt by Plaintiff to re-frame his suit as one only concerned with prospective injunctive relief in his Response to the Motion to Dismiss is disingenuous.  To the extent that Plaintiff attempts to enjoin KCTCS from enforcing Title IX rules, regulations, and guidelines "as applied," he is again requesting retrospective relief, as his request is based on how those rules, regulations, and guidelines were applied to him specifically, instead of mounting a facial challenge to their broader constitutionality.

However, Plaintiff makes a single request that falls under the category of prospective relief—reinstatement of his professor position at Big Sandy.  "[C]laims for reinstatement are prospective in nature and appropriate subjects for *Ex parte Young* actions."  *Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002).  Determining whether *Ex parte Young* applies "does not involve an analysis of the merits of a plaintiff's claims."  *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003).  Therefore, the Eleventh Amendment bars all of Cecil's claims against KCTCS, but not his claim for reinstatement leveled against Dr. Zylka and John Roes 1 through 5 in their official capacities.

**C.     Official Capacity Claims Against Dr. Zylka and John Roes 1 through 5**

Although the Eleventh Amendment does not bar Cecil's claim for reinstatement against Dr. Zylka and John Roes 1 through 5, he has otherwise failed to state a claim upon which relief can be granted.  It is unclear precisely what causes of action Cecil brings as a means of achieving reinstatement, but it appears that he asserts the following claims for injunctive relief against the individual Defendants in their official capacities: (1) violation of the Fourteenth Amendment Due Process Clause, (2) deliberate indifference to violations of his constitutional rights, (3) discrimination in violation of Title IX, and (4) discrimination in violation of Title VII of the Civil Rights Act and the Kentucky Human Rights Act.  (Doc. # 30 at 8, 15, 17, and 19).  Each of these claims will be discussed in turn.

### 1.     Claim under 42 U.S.C. § 1983

Cecil alleges that the individual Defendants violated the Due Process Clause of the Fourteenth Amendment, and brings suit under 42 U.S.C. §§ 1983, 1985, and 1988 to redress this injury.  (Doc. # 11 ¶¶ 28-47).  Plaintiff's claims under the Due Process Clause through § 1983 fails because while his position as a non-tenured professor at KCTCS may be properly considered a property interest, § 1983 is not the proper avenue to redress his injury.

The Due Process Clause of the Fourteenth Amendment prohibits a State from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  Title 42 U.S.C. § 1983 provides plaintiffs an avenue to vindicate a violation of federal rights, including those conferred by the Due Process Clause of the Fourteenth Amendment.  *See Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).

The statute provides that "every person who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. Section 1983 "creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).

To maintain a § 1983 action based on a violation of procedural due process, Cecil must show he has a legitimate claim of entitlement to a property interest—here, his employment with KCTCS. *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005). "In the context of university employment, the Supreme Court has held that 'rules and understandings, promulgated and fostered by state officials' can form the foundation of a protected property interest." *Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009) (quoting *Perry v. Sindermann*, 408 U.S. 593, 602-03 (1972)). A property interest's "dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The Sixth Circuit has determined that there is no "property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary," and therefore a plaintiff "must point to some policy, law, or mutually explicit understanding that both confers the benefits and limits the discretion of the [State] to rescind the benefit." *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409-410 (6th Cir. 2002).

Here, Plaintiff Cecil asserts that "[u]nder both federal and state law, [he] had a constitutionally protected property and liberty interest in his employment with KCTCS."

9

(Doc. # 11 ¶ 35).  In his Response to Defendants' Motion to Dismiss, he clarifies that he had "a property interest in performing the remainder of his contract" as he was contracted to work for KCTCS for the entire academic year, and instead was terminated prior to the end of his contract.  (Doc. # 30 at 10).  However, unfortunately for Cecil, under Sixth Circuit precedent, "[w]hen a person is hired for a fixed period of time . . . and that person is dismissed prematurely, no federal cause of action lies under section 1983 to redress what is best characterized as an ordinary breach of contract."  *Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1273 (6th Cir. 1988).  As explained in *Ramsey*:

> [A] nontenured employee's property interest in continued employment is created and defined by the employee's contract.  The employee has a property interest for the duration of the employment contract, but the deprivation of that finite interest can be compensated adequately by an ordinary breach of contract action.

*Id.* at 1274.  *See also Sharp v. Lindsey*, 285 F.3d 479, 487-89 (6th Cir. 2002) (holding that although an employee had a property interest in his employment, because it was governed by an employment contract, requiring him to file a breach of contract suit to redress his injury "does no violence to the concept of due process of law"); *Cf. Carroll v. Knox Cnty. Bd. of Ed.*, Nos. 3:07-cv-345, 3:08-cv-73, 2010 WL 2507046, at *11 (E.D. Tenn. June 17, 2010) (holding that where a "teacher has a fixed-term interest in the supervisory position created solely by contract, Section 1983 does not provide an appropriate remedy for the deprivation of such property interest" and instead, "the appropriate remedy is to file a breach of contract claim under state law").

Cecil's contract dispute with KCTCS could easily be resolved through an ordinary contract action.  It would not be difficult to calculate the finite amount KCTCS failed to pay Cecil due to his contract termination, as the contract clearly provides that Cecil is to be paid $3,028.33 per month, through June 30, 2019.  (Doc. # 11-2).  Therefore, because

Cecil relies only on his contract with KCTCS to establish a protected property interest, his injury cannot be redressed through § 1983 and instead must be redressed through an ordinary contract action in state court.

So far as Cecil alleges that he was deprived of a liberty interest, this claim is also not well-taken.  A "person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the [F]ourteenth [A]mendment." *Quinn v. Shirley*, 293 F.3d 315, 319 (6th Cir. 2002).  In order to establish that he was deprived of a liberty interest, Cecil must show that KCTCS made stigmatizing statements in conjunction with his termination that were made public.  *Id.* at 320.  Cecil makes no such allegation to this effect in his Complaint.  (*See* Doc. # 11).

Therefore, the § 1983 claim asserted by Cecil against the individual Defendants in their official capacities is not the proper vehicle through which to redress his alleged injury, and is therefore **dismissed**.

### 2.    *Claim under 42 U.S.C. § 1985*

Cecil further brings a claim for violation of 42 U.S.C. § 1985, which prevents persons from engaging in a conspiracy to interfere with civil rights.  The claim is listed in Count I of Cecil's amended Complaint, (Doc. # 11 at 7), but Cecil sets forth no factual allegations, or even conclusory statements, establishing a conspiracy between the Defendants.  For this reason, Cecil fails to plead sufficient factual allegations to state a claim under § 1985.  This claim is therefore **dismissed** against the individual Defendants in any official or individual capacity.

### 3.     Claim under 42 U.S.C. § 1988

Cecil additionally asserts a claim under 42 U.S.C. § 1988, which provides the Court the power to grant fees in actions proceeding under § 1983 and § 1985, among others. However, to succeed in alleging a claim under § 1988, a plaintiff must be the prevailing party.  42 U.S.C. § 1988(b); *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 619 (6th Cir. 2007) (noting that § 1988 "requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail").  Because both Plaintiff's § 1983 claim and § 1985 claim have been dismissed, he is unable to demonstrate that he is the prevailing party in either a § 1983 or § 1985 action and therefore cannot recover fees under § 1988.  Thus, Plaintiff's claim under § 1988 is **dismissed.**

### 4.     Deliberate Indifference

Next, Plaintiff asserts a deliberate indifference claim against KCTCS, Zylka, and John Roes 1 through 5, alleging that Defendants were deliberately indifferent to the violation of Cecil's constitutional rights.  (Doc. # 11 at 10).  Confusingly, Plaintiff asserts in his Response to Defendants' Motion to Dismiss that "Defendant [] erred in construing Count II as a Title IX – Deliberate Indifference claim as opposed to a § 1983 Deliberate Indifference Claim."  (Doc. # 30 at 15).  In support of this point, Plaintiff cites the deliberate indifference standard in the context of failure-to-train claims and Eighth Amendment violations.  (*Id.* at 15-16).  That standard requires that defendants "know[] of and disregard[] and excessive risk to inmate health or safety."  *Flint ex rel. Flint v. Ky. Dep't of Corrs.*, 270 F.3d 340, 352 (6th Cir. 2001).  Plaintiff cites no support for his proposition that this standard applies in the context in this case, and instead attempts to analogize his claim to one under the Eighth Amendment, which prohibits the government from

imposing cruel and unusual punishment.  While there is a deliberate indifference cause of action under § 1983 covering the health and safety of inmates or pre-trial detainees, which can be brought under both the Eighth and Fourteenth Amendments, *see Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020), this Court has found no authority which broadens the scope of deliberate indifference to the extent requested by Plaintiff.  It is not the Court's responsibility to develop a plaintiff's assertions into cognizable claims, especially where a plaintiff baselessly declares the existence of a cause of action without precedential support.  Therefore, Plaintiff's deliberate indifference claim is **dismissed**.

### 5.      *Discrimination in Violation of Title IX*

Cecil further alleges that Dr. Zylka and John Roes 1 through 5 discriminated against him in violation of Title IX, 20 U.S.C. § 1681, *et seq*., by "wrongfully subject[ing]" him to a "disciplinary process marred by procedural flaws and sexual bias against males." (Doc. # 11 ¶ 62).  Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance."  20 U.S.C § 1681(a).  Plaintiff alleges an "erroneous outcome" claim, relying on the decision in *Doe v. Oberlin College*, 963 F.3d 580, 586 (6th Cir. 2020).  (Doc. # 11 ¶ 64).  Under this theory, a plaintiff must illustrate that "a university reached 'an erroneous outcome in a student's disciplinary proceeding because of the student's sex.'"  *Id.* (quoting *Doe v. Baum*, 903 F.3d 575, 585 (6th Cir. 2018)).  Even assuming without deciding that this same theory can be utilized by professors at universities that receive federal funds, Cecil's claim fails.

In order to state a cognizable erroneous outcome claim, "'a plaintiff must plead facts sufficient to (1) cast some articulable doubt on the accuracy of the disciplinary proceeding's outcome, and (2) demonstrate a particularized causal connection' between the flawed outcome and sex discrimination." *Id.* The Court will assume without deciding that Cecil has casted doubt on the disciplinary proceeding's outcome due to his inability to cross-examine his accusers, and therefore meets the first element of an erroneous outcome claim. *See Baum*, 903 F.3d at 585-86.

Cecil argues that his "specific allegations of multiple procedural regularities" or "patterns of decision-making" are sufficient to raise a plausible inference of sex discrimination under *Oberlin*. (Doc. # 30 at 17-18). However, unlike in *Oberlin*, where the plaintiff showed that the college's routine disciplinary policies were not applied in his case, Cecil does not explain how KCTCS's investigation or hearing into his conduct were inconsistent with its stated policies and procedures. 963 F.3d at 586-87. Further, in *Oberlin*, the Sixth Circuit also found that the hearing panel failed to account for Doe's accuser's inconsistent statements, and that the College's campus climate report reported that in every single case where a hearing was held, the accused was found responsible on at least one charge. *Id.* at 587. So far as Cecil is attempting to show that KCTCS's "patterns of decision-making" are discriminatory, his claim likewise fails. Unlike in *Oberlin*, where the plaintiff pointed to the campus climate report to support his claim, Cecil's conclusory statements are entirely speculative.

A more detailed look at the allegations in this case compared to those in *Oberlin* reveals why Cecil's claim is woefully deficient. Cecil's amended Complaint points to no

14

KCTCS policies that were inconsistently applied to him, and instead makes only conclusory statements to support his Title IX claim. Namely, that:

> Plaintiff was wrongfully subjected to a KCTCS' disciplinary process marred by procedural flaws and sexual bias against males.

> [I]n virtually all cases involving a Title IX complaint at KCTCS, the accused is male and the accusing students are female.

> KCTCS is susceptible to internal and external pressures including efforts by those who wish to change the so called "campus rape culture" at the expense of the individual rights of the accused male. KCTCS has embraced this view, which results in bias in the administration of the disciplinary process and destroys the presumption of innocence that Plaintiff and similarly situated males are entitled to.

> [M]ale students in sexual misconduct cases at KCTCS are discriminated against on the basis of their sex. Males are presumed guilty, forced to meet a burden of proof that is inconsistent with the College policies, and credibility determinations are made against males.

(Doc. # 11 ¶ 62, 63, 67, 72). Unfortunately for Cecil, "external pressure alone is not enough to state a claim that the university acted with bias in this particular case." *Baum*, 903 F.3d at 586. Instead, Cecil must provide "other circumstantial evidence of bias in [his] specific proceeding." *Id.* This standard is again replicated in *Oberlin*—"[w]hat Doe must show here, rather, is simply that he alleged facts supporting an inference of sex bias in his particular proceeding." 963 F.4d at 586. None of Cecil's allegations in his Title IX claim are specific to him. In fact, almost all of his allegations discuss "males" and "male students" with no particular connection to his disciplinary proceeding, or even procedures used generally by KCTCS. As was noted in *Iqbal*, "mere conclusory statements, do not suffice." 556 U.S. at 678-79. Therefore, Cecil's Title IX claim is **dismissed**.

### 6. *Discrimination in Violation of Title VII and the Kentucky Human Rights Act*

Title VII broadly prohibits employment discrimination based on a person's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Cecil's amended

Complaint alleges the elements of prima facie case of discrimination under Title VII by asserting he was a member of a protected class, subject to an adverse employment action, was qualified to maintain his position, and replaced by someone outside of the protected class. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016). Because the Kentucky Civil Rights Act ("KCRA") mirrors Title VII, "discrimination claims brought under the KCRA are analyzed the same way as those brought under Title VII." *Beatty v. Frito-Lay, Inc.*, 429 F.Supp.3d 342, 347 (E.D. Ky. 2019) (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000)). Therefore, if the claim under Title VII fails, so does the claim under the KCRA.

Unfortunately for Cecil, the substance of his Title VII and KCRA claim "offers nothing but legal conclusions and a recital of the elements of a gender discrimination claim." *Bargo v. Goodwill Indus. of Ky., Inc.*, 969 F.Supp.2d 819, 825 (E.D. Ky. 2013). Instead of offering any factual basis to support his discrimination claim, Cecil simply states that "Defendant[]s discriminated against Plaintiff due to his gender, in deciding to terminate Plaintiff's employment." (Doc. # 11 ¶ 82). While a plaintiff "need not present 'detailed factual allegations,'" he "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that discrimination occurred. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678)). A complaint's allegations must include more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 566 U.S. at 678.

While Cecil attempts to correct his pleading mistake in his Response to Defendants' Motion to Dismiss by pointing out that he has "describe[d] a number of

procedural irregularities during the investigation," and that Defendants were under significant pressure to comply with a 2011 Dear Colleague Letter from the Department of Education, he does not establish how these conclusory allegations establish a plausible inference of gender discrimination.  (Doc. # 30 at 19-20).  Because Plaintiff fails to create any inference of a causal connection between his adverse employment action and discrimination based on his gender, his Title VII and KCRA claims are **dismissed**.

Accordingly, Plaintiffs only remaining claims are those for monetary damages asserted against Dr. Zylka and John Roes 1 through 5 in their individual capacities.

### D.     Individual Capacity Claims

In his brief opposing Defendants' Motion to Dismiss, Plaintiff states that he brings damage claims against Zylka and John Roes 1 through 5 in their individual capacities. (Doc. # 30 at 9).  Although the Eleventh Amendment prohibits official-capacity claims for damages against state officials, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Barton*, 293 F.3d at 948, it does not prevent plaintiffs from asserting damages claims against state officials in their individual capacity, *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003).  However, Cecil's amended Complaint asserts no factual allegations against Zylka or John Roes 1 through 5 in their individual capacities.  In fact, his amended Complaint states the opposite—"at all relevant times [the individual Defendants were] employed and acting in the course of [their] employment."  (Doc. # 11 ¶ 8).  This allegation necessarily forecloses Cecil's argument that his remaining claims are asserted against the individual Defendants in their individual capacities.

Cecil instead argues that he has named "Dr. Zylka and John [R]oes, as separate and distinct defendants, and they are thus individually named."  (Doc. # 30 at 19).  But, a

reading of the amended Complaint does not make this clear.  As discussed above, Cecil's amended Complaint alleges that at all times the individual Defendants were acting in their official capacities and there are few if any context clues in the amended Complaint that put the individual Defendants on notice that they were being sued individually.  For example, although Plaintiff states at the beginning of his amended Complaint that he is seeking damages, his prayer for relief lists only injunctive relief and attorney's fees.  (Doc. # 11 at 2, 18-19).  Cecil ostensibly recognizes this flaw in his pleading as he requests "leave to file his Second Amended Complaint to cure the perceived defect."  (*Id.*).  However, in the nearly eleven months since Defendants filed their Motion to Dismiss, Plaintiff has not moved the Court for leave to file a second amended Complaint.

Even if Cecil appropriately re-styled his above claims against the individual Defendants in their individual capacities, his claims would still not be able to proceed.  For example, there is no individual liability under: (1) Title IX, *Bose v. Bea*, 947 F.3d 983, 989 (6th Cir. 2020), or (2) Title VII or the Kentucky Civil Rights Act, *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997).  Further, as to Plaintiff's Due Process claim, as determined above he cannot obtain injunctive relief against the individual Defendants in either their official or individual capacity.

### E.   State-Law Claims

Cecil also brings state-law claims against Zylka and John Roes 1 through 5 for: (1) breach of contract, (2) breach of common law duty of fundamental fairness, (3) negligence, and (4) intentional infliction of emotional distress.  (Doc. # 11 ¶¶ 74-78, 84-100).  Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.

Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction over claims if it "has dismissed all claims over which it has original jurisdiction." Because of this, it is within the Court's discretion to determine whether to adjudicate the remaining claims. *Brooks v. Rothe*, 577 F.3d 701, 809 (6th Cir. 2009). Here, the Court declines to exercise supplemental jurisdiction over Cecil's remaining state law claims, and therefore dismisses his claims against the individual Defendants in their individual capacity due to a lack of subject-matter jurisdiction.

### F.   Declaratory Judgment

Cecil's last two counts alleged in his amended Complaint request a declaratory judgment in his favor. (Doc. # 11 ¶¶ 96-105). Cecil requests pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act) that the Court reverse the findings by KCTCS, restore Cecil's reputation, seal his disciplinary file, remove any record of his termination from his personnel file, permanently destroy his accusers' complaints, reinstate him as a faculty member, and declare KCTCS regulations as to adjudication of sexual misconduct unconstitutional as applied. (*Id.* ¶ 100). Cecil additionally requests that the Court declare that he had a valid and enforceable employment contract with KCTCS. (*Id.* ¶ 102).

The Declaratory Judgment Act ("the Act") allows the Court "[i]n a case of actual controversy within its jurisdiction" to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Whether to grant this type of relief is discretionary. *Aetna Cas. & Sur. Co. v. Sunshine Corp.*, 74 F.3d 685, 687 (6th Cir. 1996). However, in a similar fashion to the aforementioned law on immunity, a request for a declaratory judgment may be barred by the Eleventh Amendment if the requested relief is solely retroactive. *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir.

19

Dec. 6, 2016); *Brown v. Strickland*, No. 2:10-cv-166, 2010 WL 2629878, at *4 (S.D. Ohio June 28, 2010) ("[A] declaratory judgment against state officials declaring that they violated federal law in the past constitutes retrospective relief.").  But, retrospective relief "is permitted when it is ancillary to a prospective injunction designed to remedy a continuing violation of federal law."  *Cummins*, 662 F. App'x at 444; *see also Banas v. Dempsey*, 742 F.2d 277, 288 (6th Cir. 1984) ("[t]o escape the bar of the Eleventh Amendment, an order against state officials must be both 'prospective' *and* ancillary to a *Young* injunction ordering state officials to comply with federal law.").

Unfortunately for Cecil, there is no continuing violation of federal law laid out in his request for declaratory relief, except for the request for reinstatement.  Regardless, *Banas* bars him from seeking a declaratory judgment without the issuing of an *ex Parte Young* injunction, which as discussed above, is not appropriate in this case.  The nature of his request underscores this point.  All of the language used in Cecil's declaratory judgment counts is couched in past-tense.  Even in his Response to Defendants' Motion to Dismiss Cecil makes clear that his request is for retrospective relief—"Cecil is requesting a declaratory judgment declaring that the outcome and findings made by Defendants relating to the allegations set forth by his accusers be reversed."  Therefore, Cecil's request for a declaratory judgment is **dismissed**.

## III.  CONCLUSION

For the reasons articulated herein, **IT IS ORDERED** as follows:

(1)    Defendants' Motion to Dismiss (Doc. # 25) is **GRANTED**;

(2)    Plaintiff's Amended Complaint (Doc. # 11) is **dismissed** as detailed below:

      (a)    Plaintiff's claims against KCTCS are **dismissed with prejudice**;

(b)      Plaintiff's federal claims against Dr. Zylka and John Roes 1 through 5 in both their official and individual capacities are **dismissed with prejudice**;

(c)      Plaintiff's state law causes of action, namely, breach of contract, breach of common law duty of fundamental fairness, negligence, and intentional infliction of emotional distress, are **dismissed without prejudice**; and

(3)      A Judgment shall be filed contemporaneously herewith.

This 9th day of September, 2021.

Signed By:

_**David L. Bunning**_ *DB*

**United States District Judge**

M:\DATA\ORDERS\PikeCivil\2020\20-06 Cecil v. Ky Cmty Tech Coll MOO.docx